# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

_____

Nº 09-1793 (JFB) (AKT)
_____

GARY M. EHRHARD,

Plaintiff,

VERSUS

THE HONORABLE RAYMOND H. LAHOOD, SECRETARY OF THE U.S. DEPARTMENT OF TRANSPORTATION,

Defendant.

_____

**MEMORANDUM AND ORDER**
March 28, 2012
_____

JOSEPH F. BIANCO, District Judge:

Plaintiff Gary M. Ehrhard ("Ehrhard" or "plaintiff") brought this civil rights action against his employer, the Honorable Raymond H. Lahood, the Secretary of the United States Department of Transportation ("Lahood," "Department" or "defendant") alleging the following: (1) employment discrimination on the basis of gender in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as amended ("Title VII"); and (2) unlawful retaliation for engaging in activities protected by the aforementioned statute. In particular, plaintiff, who is an air traffic controller, asserts that female air traffic controllers were entitled to special arrangements for requesting leave for child care purposes, and such arrangements were not made available to him even when he requested and was denied leave for child care in June and August 2007. Moreover, plaintiff contends that, when he complained about this disparate treatment, he was retaliated against in a number of ways including, *inter alia*, the following: (1) the denial of leave in August 2007; (2) being required to provide a medical certificate for sick leave; (3) being temporarily charged AWOL in October 2007; (4) having his annual leave cancelled in November and December 2007; (5) the failure to investigate a co-worker's verbal assault; (6) failure to investigate plaintiff's claims of vandalism; and (7) being sent home for violations of the dress code (which, according to plaintiff, was not enforced against other employees).

Plaintiff seeks actual, compensatory and punitive damages, attorney's fees and other costs.

The defendant now moves for summary judgment. For the reasons set forth below, the motion is granted in part and denied in part. Specifically, defendant is entitled to summary judgment for the gender discrimination claim based upon the June 27, 2007 denial of leave because such claim is time-barred and because plaintiff elected an administrative remedy. However, the defendant's motion is denied in all other respects. Construing the evidence in the light most favorable to plaintiff, plaintiff has pointed to sufficient evidence to create a disputed issue of material fact as to whether plaintiff was subject to gender discrimination in connection with his August 2007 leave request, and whether he was subject to retaliation for complaining about gender discrimination in connection with leave requests.

## I.   BACKGROUND

### A.   The Facts

The facts, construed in the light most favorable to plaintiff, the non-moving party, *see Capobianco v. City of New York*, 422 F.3d 47, 50 (2d Cir. 2005), are as follows:

### 1.  Plaintiff's Request for Leave on June 27, 2007

Plaintiff is employed by the Federal Aviation Administration ("FAA"), a division of the Department of Transportation ("DOT"), as an air traffic controller at the New York Center in Ronkonkoma, New York. (Pl.'s 56.1 Counter Statement ¶ 2.)[1]

Ehrhard is married with two daughters who, in 2007, were 8 and 11 years old. (*Id*. ¶ 5.) Unless a family member was available, plaintiff's wife provided care for the children. (*Id*.) Before September 2006, plaintiff would take annual leave or convert "credit hours" into annual leave to care for his daughters when his wife or family members were not available for child care. (*Id.* ¶ 6.) After a New Collective Bargaining Agreement went into effect in September of 2006, employees could no longer accrue an unlimited amount of credit hours. (*Id.* ¶ 7.) Plaintiff contends that, when he took annual leave before September 2006, he did not have to request that the leave was for child care purposes. (*Id.* ¶ 6.)

On June 25, 2007, plaintiff made a request to his direct supervisor, Charles Grandison ("Grandison"), for three hours of Leave Without Pay ("LWOP") on June 27, 2007. (*Id.* ¶ 8.) Defendant contends that this request was made orally, while plaintiff states that he made his request both verbally and in writing. (*Id.*, Def.'s 56.1 Statement ¶ 8.) Plaintiff does not recall if this was his first request for LWOP. (Pl.'s 56.1 Counter Statement ¶ 8.) According to plaintiff, Grandison told him to submit a written request to John Azzarone ("Azzarone"), the Operations Manager at the time, while his similarly situated female co-workers had their requests for child care routinely approved without submitting a written request every time leave was needed. (*Id.* ¶ 9.) Conversely, defendant states that Grandison told plaintiff that LWOP requests could only be approved by the Facility Manager, David LeCates ("LeCates"), upon

---

[1] Where one party's 56.1 Statement is cited, the other party does not dispute the facts alleged, unless otherwise stated. In addition, although the parties'

Rule 56.1 statements contain specific citations to the record to support their statements, the Court has cited to the Rule 56.1 statements, rather than the underlying citation to the record, when utilizing the 56.1 statements for purposes of this summary of facts.

submission of an advance, written request, which provided a sufficient reason for the request. (Def.'s 56.1 Statement ¶ 9.) According to plaintiff, defendant failed to respond to his request for LWOP until he filed his complaint in this action. (Pl.'s 56.1 Counter Statement ¶ 10.) Moreover, when plaintiff did not go to work for the three hours requested, he was charged annual leave rather than LWOP. (*Id.*) Plaintiff also contends that he complained to Grandison that his requests for leave were either denied or ignored, while requests by his similarly situated female co-workers were routinely granted. (*Id.*)

On July 14, 2007, plaintiff filed a grievance. (*Id.* ¶ 12.) Plaintiff's grievance complaint was that 17 days had passed since he submitted his request to convert the three hours of leave he used on June 27, 2007 from annual leave to LWOP and he still had not received a response. (*Id.*) According to defendant, plaintiff's grievance was settled by a Grievance Settlement Agreement dated August 14, 2007. (Def.'s 56.1 Statement ¶ 14.) Pursuant to the Grievance Settlement Agreement, plaintiff's LWOP request was approved, and his time and attendance recorders were amended. (*Id.*)

Plaintiff complained to Grandison that he was treated differently from three similarly situated female controllers, Tracey Acampora ("Acampora"), Susan Barrett (also known as Susan Molloy) ("Molloy" or "Barrett") and Elizabeth Eddy ("Eddy") because "the females in my area were getting it [LWOP and FMLA leave] approved on a regular basis and here I am asking for three hours and they are giving me the runaround, they are not answering me, they are delaying." (*Id.* ¶ 15.) Plaintiff's belief was based on viewing the daily staffing sheets and co-worker

comments. (Pl.'s 56.1 Counter Statement ¶ 16.)

According to the defendant, before 2007, Acampora, Molloy and Eddy were former part-time employees. (Def.'s 56.1 Statement ¶ 18.) In April 2007, LeCates eliminated part-time schedules. (*Id.*) In order to accommodate the former part-time employees' child care needs, LeCates permitted the former part-time employees, and others, to submit to him a single open-ended request for LWOP for child care purposes. (*Id.*) LeCates then approved the respective requests for open-ended LWOP in writing and delegated the authority to approve the requests on a case-by-case basis to the employees' direct supervisor. (*Id.*) According to plaintiff, his female co-workers were able to verbally request LWOP for child care without any documentation to their direct supervisor and their requests were almost always approved. (Pl.'s 56.1 Counter Statement ¶ 18.)

### 2. Plaintiff's Request for Leave on August 24, 2007

On June 26, 2007, plaintiff made a written request for annual leave for the week of August 20 through 24, 2007. (*Id.* ¶ 21.) The request was approved for August 20 and 22, but was not approved August 21, 23 and 24. (*Id.*) On August 8, 2007, plaintiff requested annual or sick leave under the FMLA for August 24, 2007 to care for his children. (*Id.* ¶ 22.) Grandison denied his request on August 23, 2007. (*Id.*) By letter dated August 28, 2007, plaintiff asked Grandison to explain why his request for leave was denied. (*Id.* ¶ 23.) Plaintiff explained in his letter that he did not believe he was receiving equal employment opportunities since leave under FMLA was being used on a regular basis by other controllers. (*Id.*)

Defendant contends that leave was denied because plaintiff did not claim that his children required care due to a serious health condition. (Def.'s 56.1 Statement ¶ 24.) Plaintiff, however, claims that his similarly situated female colleagues did not need to make a distinction between the LWOP and FMLA for child care purposes when making a leave request. (Pl.'s 56.1 Counter Statement ¶ 24.)

### 3. Alleged Retaliation as to Leave and Attendance

#### a.  Temporarily Charged AWOL on August 24, 2007

According to plaintiff, Ehrhard requested leave to care for his children on August 24, 2007, but his request was denied. (*Id*. ¶ 27.) Plaintiff then advised the supervisor on duty that he had no choice but to stay home. (*Id*.) Plaintiff was subsequently charged with AWOL. (*Id*.) Being charged with AWOL can result in loss of pay and/or disciplinary action. (*Id*.) The AWOL charge was eventually converted to another form of leave, but plaintiff was not paid for said day until a future pay period. (*Id*. ¶ 28.)

#### b.  Sick Leave Medical Certificate Memorandum

According to the defendant, at a meeting on September 10, 2007, Grandison gave plaintiff a memorandum dated August 23, 2007 (the "memorandum") which advised plaintiff that he made questionable use of his sick leave from August 2006 to August 2007 and that he was directed to provide a medical certificate for each absence due to illness or injury to his supervisor of the first shift upon returning from an absence. (Def.'s 56.1 Statement ¶ 29.) Plaintiff states that, in the sixteen years of employment

with the defendant, he never received a letter like this. (Pl.'s 56.1 Counter Statement ¶ 29.) This requirement was imposed after plaintiff complained to his supervisors that he believed he was being treated differently than his similarly situated female co-workers. (*Id*.) Plaintiff claims that, at the September 2007 meeting, he provided Grandison with medical documents and, out of the sick leave plaintiff had taken, there were only two instances when he could not provide documentation. (*Id*. ¶ 30.) According to the defendant, the memorandum did not restrict plaintiff's use of leave, but rather the memorandum provided that he would be charged AWOL for absences if upon his return he did not provide medical certificates setting forth the required information. (Def.'s 56.1 Statement ¶ 30.) However, plaintiff claims that, when he provided medical documentation for his use of sick leave while on restriction, he was told that the documentation was insufficient. (Pl.'s 56.1 Counter Statement ¶ 30.) The memorandum's requirements expired February 23, 2008. (Def.'s 56.1 Statement ¶ 31.)

#### c.  Plaintiff is Temporarily Charged AWOL on October 29 and 30, 2007

According to the defendant, plaintiff was approved for sick leave on October 29 and 30, 2007, but upon his return failed to submit the proper documentation as required by the memorandum. (*Id*. ¶ 32.) Plaintiff claims that he did not provide documentation upon his return because he believed that the leave had already been approved and he did not know he had to provide the documentation. (Pl.'s 56.1 Counter Statement ¶ 32.) Furthermore, plaintiff states that he could not find Grandison to give him his documentation and, when he did find Grandison, Grandison

4

said the documentation he produced was insufficient. (*Id.*) Defendant contends that on November 10, 2007, plaintiff gave a medical certificate to Sam Shelton ("Shelton"), the manager on duty for the night shift, but the medical certificate given to Shelton provided no detail. (Def.'s 56.1 Statement ¶ 34.) According to the defendant, plaintiff returned to the doctor and obtained a medical certificate dated November 16, 2007, and since the certificate provided adequate information, plaintiff's leave was approved and he was paid for the two days. (*Id.* ¶ 35.)

### d. Plaintiff's Annual Leave for November 4 and 5, 2007 is Cancelled and Then Reinstated

James Dorrance ("Dorrance"), a supervisor, approved plaintiff's request for annual leave on November 4 and 5, 2007. (Pl.'s 56.1 Counter Statement ¶ 36.) However, Grandison subsequently cancelled the approved leave and gave it to Eddy claiming that she had priority. (*Id.*) Defendant claims that, after the matter was brought to the attention of Azzarone, plaintiff's leave was reinstated. (Def.'s 56.1 Statement ¶ 37.) Plaintiff does not recall if his leave was reinstated. (Pl.'s 56.1 Counter Statement ¶ 37.)

### e. Grandison Cancelled Plaintiff's Annual Leave for December 29 through 31, 2007

Plaintiff scheduled vacation annual leave for December 29 through 31, 2007. (*Id.* ¶ 38.) Vacation annual leave is bid 90 days before the state of the calendar year and awarded based on seniority. (*Id.* ¶ 39.) On December 5, 2007, Grandison cancelled plaintiff's vacation leave. (Def.'s 56.1 Statement ¶ 39.) Defendant claims that Grandison cancelled the leave because

plaintiff did not have an annual balance leave to cover all three days. (*Id.*) Plaintiff did have sufficient credit hours to cover two of three days, but Grandison said credit hours could not be used for vacation leave. (*Id.*) Plaintiff contends that he had a sufficient balance of leave and credit hours combined. (Pl.'s 56.1 Counter Statement ¶ 39.) Plaintiff also alleges that his similarly situated female co-workers were permitted to substitute credit hours for vacation leave and never had their leave cancelled. (*Id.*)

### 4. Alleged Retaliation as to Matters Other than Leave and Attendance

### a. Failure to Investigate a Co-worker's Verbal Assault on Plaintiff and to Reprimand Co-worker

On August 7, 2007, plaintiff was working the midnight shift and walked into the controller lounge during his break. (*Id.* ¶ 41.) After plaintiff put a garbage container by the door to let light in, a co-worker, Carey Nussbaum, became irate, approached plaintiff, and started shouting profanities. (*Id.*) Plaintiff reported the incident and filed a workplace violence complaint. (*Id.* ¶ 42.) Defendant claims that, because the room was dark, plaintiff could not see who witnessed the incident and no one came forward. (Def.'s 56.1 Statement ¶ 42.) Plaintiff agrees that the room was dark and he could not see who was there but Gerry Henline, a controller, made a statement that he witnessed the incident. (Pl.'s 56.1 Counter Statement ¶ 43.) According to defendant, Azzarone could not determine if there were any witnesses to the incident and ended his investigation. (Def.'s 56.1 Statement ¶ 44.)

### b. Grandson's Alleged Failure to Investigate Plaintiff's Claims of Vandalism

On March 3, 2007, November 19, 2007 and January 31, 2008, plaintiff complained to Grandison that his name strip was vandalized by someone drawing red dots on it and that the microphone from his headset was taken. (Pl.'s 56.1 Counter Statement ¶ 45.) Grandison took no action although, according to plaintiff, Azzarone issued a memorandum, which did not mention any particular incidents or names, discussing the need for an environment free of harassment after similar complaints were filed by Eddy. (*Id.*) According to plaintiff, he complained to Grandison on numerous occasions, but nothing was ever done. (*Id.* ¶ 46.) Grandison advised plaintiff that he should secure his belongings in a separate location to prevent future vandalism; however, no one else was required to store their belongings away. (*Id.*)

### c. Plaintiff is Sent Home and Charged with 1.5 Hours for Violations of Dress Code

On May 28, 2008, plaintiff was sent home and charged with 1.5 hours of annual leave. (*Id.* ¶ 50.) According to the defendant, the dress code prohibited certain attire, including jeans, as inappropriate. (Def.'s 56.1 Statement ¶ 51.) Plaintiff denies that any other employee was sent home and charged for wearing jeans to work. (Pl.'s 56.1 Statement ¶ 51.) Plaintiff filed a grievance dated June 16, 2008 to contest his loss of leave due to being sent home but it was denied at steps 1 and 2 and not pursued further. (*Id.* ¶ 52.)

### d. Grandison Tells Plaintiff That His Use of Sick Leave Looked Suspicious

On March 19, 2009, Grandison told plaintiff that his use of sick leave on March 14, 2009 looked suspicious. (*Id.* ¶ 53.) Plaintiff's union filed a charge on April 1, 2009 alleging that it was unfair labor practice for Grandison to initiate this conversation with plaintiff without giving him the opportunity to have a union representative present. (*Id.*) Plaintiff's union subsequently withdrew the charge and the case was closed. (*Id.*)

### 5. Procedural History

Plaintiff filed an EEO complaint on November 7, 2007, and then filed an amended EEO complaint on January 14, 2008 and obtained a right to sue letter. On April 30, 2009, plaintiff filed a complaint in this Court. On August 17, 2009, plaintiff filed an amended complaint. On March 14, 2011, defendant requested a pre-motion conference in connection with the defendant's motion for summary judgment, which was held on April 6, 2011. On June 1, 2011, defendant filed the summary judgment motion. On July 8, 2011, plaintiff filed his opposition papers. On July 21, 2011, defendant filed his reply. Oral argument was held on October 18, 2011. The Court has fully considered the submissions and arguments of the parties.

## II. STANDARD OF REVIEW

The standards for summary judgment are well settled. Pursuant to Federal Rule of Civil Procedure 56(a), a court may only grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving

party bears the burden of showing that he or she is entitled to summary judgment. *Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (quoting *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996)); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) (summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the moving party has met its burden, the opposing party "'must do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial.*'" *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) (emphasis in original)). As the Supreme Court stated in *Anderson*, "[i]f the evidence is merely colorable, or is not

significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50, 106 S. Ct. 2505 (citations omitted). Indeed, "the mere existence of *some* alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. *Id.* at 247-48, 106 S. Ct. 2505 (emphasis in original). Thus, the nonmoving party may not rest upon mere conclusory allegations or denials but must set forth "'concrete particulars'" showing that a trial is needed. *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (quoting *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir. 1978)). Accordingly, it is insufficient for a party opposing summary judgment "'merely to assert a conclusion without supplying supporting arguments or facts.'" *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996) (quoting *Research Automation Corp.*, 585 F.2d at 33).

The Second Circuit has provided additional guidance regarding summary judgment motions in discrimination cases:

> We have sometimes noted that an extra measure of caution is merited in affirming summary judgment in a discrimination action because direct evidence of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence found in affidavits and depositions. *See, e.g.*, *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994). Nonetheless, "summary judgment remains available for the dismissal of discrimination claims in cases lacking genuine issues of material fact." *McLee v. Chrysler Corp.*, 109 F.3d 130, 135 (2d Cir. 1997); *see also Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d

Cir. 2001) ("It is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases.").

*Schiano v. Quality Payroll Sys.*, 445 F.3d 597, 603 (2d Cir. 2006) (quoting *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 69 (2d Cir. 2001)).

### III. DISCUSSION

Plaintiff alleges that he has been discriminated against based on his gender in violation of Title VII and that he has been subjected to retaliation in violation of Title VII for engaging in protected activity. Defendant argues that the plaintiff's gender discrimination claim based upon the request for leave on June 27, 2007 is untimely and otherwise barred because plaintiff elected an administrative remedy. Defendant further contends that plaintiff's remaining gender discrimination and retaliation claims have no merit.

For the reasons set forth below, defendant's motion is granted in part and denied in part. In particular, the motion is granted as to the leave request for June 27, 2007 and denied in all other respects.

### A. The June 27, 2007 Gender Claim

As set forth below, plaintiff failed to timely exhaust his administrative remedies for his discrimination claim based on the June 27, 2007 denial of LWOP, and has failed to provide a basis for equitable tolling. Thus, plaintiff's gender discrimination claim based on the June 2007 leave request is time-barred. In any event, that claim is also barred because plaintiff elected to proceed through the union's negotiated grievance procedure. Accordingly, summary judgment on this claim is warranted.

Before filing a lawsuit in federal court under Title VII, a plaintiff must first exhaust his administrative remedies. *See, e.g.*, *Briones v. Runyon*, 101 F.3d 287, 289 (2d Cir. 1996) (explaining that the exhaustion requirement applies to both Title VII and ADEA). For federal employees, the procedures for exhausting these administrative remedies are contained in 42 U.S.C. § 2000e–16 and 29 C.F.R. part 1614. *See also* 29 C.F.R. § 1614.103 (stating that complaints under, *inter alia*, Title VII and the ADEA, "shall be processed in accordance with this part").

These procedures require an employee who believes he or she has been discriminated against to take certain actions within specified time limits. Specifically, the employee must first consult with an EEO counselor within forty-five days of the allegedly discriminatory event, *see* 29 C.F.R. § 1614.105(a)(1), and then file a formal complaint within fifteen days of receiving notice that the counselor has failed to resolve the claim. *See* 29 C.F.R. § 1614.105(d). After the filing of an administrative complaint, the employee can bring a federal lawsuit only within (i) ninety days of receiving notice of a final administrative decision, or (ii) 180 days of the filing of the administrative complaint if there has been no administrative action. 42 U.S.C. § 2000e–16(c); 29 C.F.R. § 1614.407; *see also, e.g.*, *Gelin v. Snow*, No. 02 Civ. 9641 (BSJ), 2005 WL 2456742, at *6 (S.D.N.Y. Sept. 30, 2005).

However, the 45-day time limit is subject to equitable tolling. *Bruce v. U.S. Dep't of Justice*, 314 F.3d 71, 74 (2d Cir. 2002); *Boos v. Runyon*, 201 F.3d 178, 184-85 (2d Cir. 2000) (considering whether equitable tolling should apply to 45–day time limit for contacting agency EEO counselor). "When determining whether

equitable tolling is applicable, a district court must consider whether the person seeking application of the equitable tolling doctrine (1) has 'acted with reasonable diligence during the time period she seeks to have tolled,' and (2) has proved that the circumstances are so extraordinary that the doctrine should apply." *Zerilli–Edelglass v. N.Y.C. Transit Auth.*, 333 F.3d 74, 80-81 (2d Cir. 2003) (quoting *Chapman v. ChoiceCare Long Island Term Disability Plan*, 288 F.3d 506, 512 (2d Cir. 2002)); *see also South v. Saab Cars USA, Inc.*, 28 F.3d 9, 12 (2d Cir. 1994) (noting that the principles of equitable tolling do not extend to what "is at best a garden variety claim of excusable neglect" (citation and quotation marks omitted)). The doctrine is "highly case-specific," and the "burden of demonstrating the appropriateness of equitable tolling . . . lies with the plaintiff." *Boo*s, 201 F.3d at 184-85; *Smith v. Chase Manhattan Bank*, No. 97-CV-4507 (LMM), 1998 WL 642930, at *3 (S.D.N.Y. Sept. 18, 1998) ("[A] court must consider the equities of the excuse offered to explain the delay and may extend the limitations period if warranted.").

Ehrhard failed to comply with these procedural requirements as it relates to his request for leave on June 27, 2007 and the time limit is not subject to tolling. Plaintiff made his request for LWOP for child care purposes on June 25, 2007, and the matter was concluded on August 14, 2007 when his grievance on the matter was settled. However, plaintiff contacted his EEO counselor on October 5, 2007, which is more than 45 days after August 14, 2007. Thus, plaintiff failed to contact his EEO counselor within 45 days of the incident as required and his claim is, therefore, untimely.

Plaintiff attempts to argue that equitable tolling should apply in his case. However,

this argument is unavailing. Plaintiff merely states that he contacted the EEO about the ongoing and continuous discrimination that plaintiff had been subjected to, which included his issues with the request for leave on June 27, 2007. Apart from this conclusory statement, plaintiff fails to provide any justification for why his complaint regarding the June 27, 2007 leave request is timely or should be equitably tolled. Thus, plaintiff has failed to demonstrate how "the circumstances are so extraordinary that the doctrine should apply." *See Zerilli–Edelglass*, 333 F.3d at 80-81.

In any event, even if the claim were not time-barred, it is barred because he first asserted it through the union's negotiated grievance procedure. It is well settled that a complainant who files a grievance "may not thereafter file a[n EEO] complaint on the same matter under this part 1614 irrespective of whether the agency has informed the individual of the need to elect or of whether the grievance has raised an issue of discrimination." 29 C.F.R. § 1614.301(a); 5 U.S.C. § 7121(d); *see also Fernandez v. Chertoff*, 471 F.3d 45, 52 (2d Cir. 2006) ("By invoking the negotiated procedure, the employee commits to resolving his grievance in accordance with the procedures prescribed in the collective bargaining agreement between his union and his employing agency."); *Delaney v. LaHood*, No. 07-CV-471 (JG)(WDW), 2009 WL 3199687, at *12 (E.D.N.Y. Sept. 30, 2009) ("when claims are brought via a negotiated grievance procedure, plaintiffs are barred from raising claims pertaining to the same matter via a 'statutory procedure' and thus, from bringing an action under Title VII"). In the instant case, plaintiff elected to raise the matter of his LWOP request for June 27, 2007 under the negotiated grievance procedures of the 2006 Collective

Bargaining Agreement by filing a grievance on July 13, 2007. Even though the grievance did not specifically claim discrimination, it unquestionably involved the same matter as his Title VII claim regarding his June 27, 2007 LWOP request and, thus, is barred as a matter of law.

In sum, summary judgment is warranted in defendant's favor in connection with the request for leave on June 27, 2007.

### B. Ehrhard's Title VII Claim of Gender Discrimination

Plaintiff also asserts a claim for gender discrimination based upon his request for leave for child care on August 24, 2007 either as annual leave or alternative sick leave, which was denied. (Am. Compl. ¶¶ 27-29.) Defendant moves for summary judgment on this claim arguing that FMLA leave was not available to plaintiff because the request did not involve the requisite "serious health condition" of a child, but rather was based upon the fact that plaintiff's wife was unable to care on that day for plaintiff's two daughters. *See* Def.'s Memorandum of Law, at 9-10 ("Plaintiff's claim of discrimination must be dismissed because DOT had a legitimate, non-discriminatory reason for denying his FMLA leave request: plaintiff was not entitled to FMLA on August 24, 2007 leave as a matter of law."). As set forth below, the Court concludes that the discrimination claim survives defendant's summary judgment motion because the claim is broader than an FMLA request. In particular, plaintiff claims that he was also denied annual leave for his child care needs in August 2007, and also was not made aware that female air traffic controllers were being permitted to use LWOP leave for child care through their direct supervisor in an open-ended, special arrangement. Thus,

the requirements of the FMLA are not dispositive of this claim. Moreover, when the evidence is construed in the light most favorable to plaintiff (including drawing all reasonable inferences in his favor) under the *McDonnell Douglas* framework, plaintiff has created a disputed issue of material fact as to whether the denial of his request for leave on August 24, 2007 was based upon his gender.

### 1. Applicable Law

Title VII prohibits discrimination of an employee based on his gender. *See* 42 U.S.C. § 2000e-2(a). Here, plaintiff claims he has been discriminated against by defendant on the basis of his gender.

The "ultimate issue" in any employment discrimination case is whether the plaintiff has met his burden of proving that the adverse employment decision was motivated at least in part by an "impermissible reason," i.e., that there was discriminatory intent. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 146 (2000); *Fields v. N.Y. State Office of Mental Retardation & Dev'l Disabilities*, 115 F.3d 116, 119 (2d Cir. 1997). In the absence of direct evidence of discrimination, a plaintiff in an employment discrimination case usually relies on the three-step *McDonnell Douglas* test. First, a plaintiff must establish a prima facie case of unlawful discrimination by showing that (1) he is a member of a protected class, (2) who performed his job satisfactorily, (3) but suffered an adverse employment action, (4) under circumstances giving rise to an inference of discrimination (or retaliation). *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 & n.13 (1973) (noting that elements of prima facie case vary depending on factual circumstances); *see also Stratton v. Dep't for the Aging for the*

*City of New York*, 132 F.3d 869, 879 (2d Cir. 1997).

Second, if the plaintiff establishes a prima facie case, "a rebuttable presumption of discrimination arises and the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the employment decision." *Stratton*, 132 F.3d at 879; *see Reeves*, 530 U.S. at 142-43. The purpose of this step is "to force the defendant to give an explanation for its conduct, in order to prevent employers from simply remaining silent while the plaintiff founders on the difficulty of proving discriminatory intent." *Fisher v. Vassar College*, 114 F.3d 1332, 1335-36 (2d Cir. 1997) (en banc) *abrogated on other grounds by Reves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 120 S.Ct. 2097 (2000).

Third, if the employer articulates a nondiscriminatory reason for its actions, the presumption of discrimination is rebutted and it "simply drops out of the picture." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510-11 (1993) (citation omitted); *see James v. N.Y. Racing Ass'n*, 233 F.3d 149, 154 (2d Cir. 2000). The burden then shifts back to the plaintiff to show, without the benefit of any presumptions, that more likely than not the employer's decision was motivated, at least in part, by a discriminatory reason. *See Fields*, 115 F.3d at 120-21; *Connell v. Consol. Edison Co.*, 109 F. Supp. 2d 202, 207 (S.D.N.Y. 2000).

To meet this burden, the plaintiff may rely on evidence presented to establish his *prima facie* case as well as additional evidence. Such additional evidence may include direct or circumstantial evidence of discrimination. *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 99-101 (2003). It is not sufficient, however, for a plaintiff merely to show that he satisfies "*McDonnell*

*Douglas*'s minimal requirements of a prima facie case" and to put forward "evidence from which a factfinder could find that the employer's explanation . . . was false." *James*, 233 F.3d at 157. Instead, the key is whether there is sufficient evidence in the record from which a reasonable trier of fact could find in favor of plaintiff on the ultimate issue, that is, whether the record contains sufficient evidence to support an inference of discrimination. *See id.*; *Connell*, 109 F. Supp. 2d at 207-08.

As the Second Circuit observed in *James*, "the way to tell whether a plaintiff's case is sufficient to sustain a verdict is to analyze the particular evidence to determine whether it reasonably supports an inference of the facts plaintiff must prove – particularly discrimination." 233 F.3d at 157; *see also Norton v. Sam's Club*, 145 F.3d 114, 118 (2d Cir. 1998) ("The thick accretion of cases interpreting this burden-shifting framework should not obscure the simple principle that lies at the core of anti-discrimination cases. In these, as in most other cases, the plaintiff has the ultimate burden of persuasion.").

### 2.   Application

Defendant argues that the plaintiff's claim of discrimination based on plaintiff's request for FMLA leave on August 24, 2007 must be dismissed because the defendant had a non-discriminatory reason for denying plaintiff's request for leave – namely, that "[u]nder the CBA, at Article 26, section 4(d) (Rule 56.1 Statement ¶ 24 and exhibit G), and under the FLMA, 29 U.S.C. § 2612(a)(1)(c), FMLA leave is available only if a child requires care due to a 'serious health condition.'" (Def.'s Memorandum of Law at 10.) Here, plaintiff did not claim that his children required care due to a serious health condition, but rather sought

leave "[f]or child care due to the fact that my wife was going to be unable to care for our two daughters (ages 8 and 11) on Friday August 24, 2007." (Def.'s 56.1 Statement ¶ 23, and Def.'s Exhibit M.) Thus, defendant contends that any denial of leave under the FMLA could not be discriminatory.

However, plaintiff's gender discrimination claim as it relates to the August 2007 request is not so narrow. As noted *supra*, defendant concedes that plaintiff initially also sought annual leave to care for his children on August 24, 2011, and that request was denied. (Def.'s 56.1 Statement ¶¶ 21-22.) Moreover, plaintiff also alleges that he was not told by his supervisor, in connection with either his June 2007 request or August 2007 request for child care leave, that female air traffic controllers had a special arrangement that allowed them to verbally request LWOP leave for child care without any documentation. (Pl.'s 56.1 Counter Statement ¶ 18.) Thus, defendant's non-discriminatory reason for denial of FMLA claim does not address the other portions of plaintiff's gender discrimination claim in connection with his August 2007 leave request for child care reasons.[2]

Moreover, viewing the evidence in the light most favorable to plaintiff, the Court concludes that plaintiff has established a prima facie case of gender discrimination, and has met its burden of creating a genuine issue of disputed facts on the issue of

whether defendant's denial of leave in August 20007 was motivated by gender discrimination.

As a threshold matter, in its motion papers, defendant has failed to articulate any reason for the denial of annual leave on August 24, 2007.[3] In any event, plaintiff relies on additional evidence in the record to raise genuine issues of fact as to whether his request for child care was treated differently than such requests by female air traffic controllers.

In particular, plaintiff points to evidence that he was not permitted to request time off from his direct supervisor for child care, while his similarly situated female colleagues were permitted to do so on a regular basis and it was routinely approved without reference to whether it was under FMLRA or LWOP. (*See* Pl.'s 56.1 Counter Statement ¶ 24.) In particular, plaintiff relies upon evidence that three female air traffic controllers, who held the exact same job as plaintiff, had a special arrangement for child care requests. (*See id.* ¶ 15-18, 89.) Pursuant to this special arrangement, the three female employees submitted a single open-ended request for LWOP for child care purposes to the Facility Manager. (*Id.* ¶ 18; Def.'s 56.1 Statement ¶ 18.) The Facility Manager approved the respective requests for open-ended LWOP in writing and delegated the authority to approve the requests on a case-by-case basis to the employees' direct supervisor. (Def.'s 56.1 Statement ¶ 18.) According to plaintiff, pursuant to this special policy, his female co-workers were able to verbally request LWOP for child care without any documentation to their direct supervisor and their requests were almost always approved.

---

[2]   The Court also notes that plaintiff contends that similarly situated female colleagues with child care issues were routinely permitted to take leave, without indicating the reason for their request for child care, nor did they have to indicate whether they were taking FMLA or LWOP. (Pl.'s 56.1 Counter Statement ¶ 24.) Thus, he also suggested inconsistent treatment based on gender even in connection with FMLA request based on child care.

[3]   Although counsel for defendant argued at oral argument that such a reason existed, it is not part of the record before this Court.

Pl.'s 56.1 Counter Statement ¶¶ 15-18, 89.) Plaintiff recalled viewing the daily staffing sheets at the New York Center and does not recall any of the three female controllers ever having their leave requests denied. (*Id.* ¶¶ 15-16.)

For example, pursuant to this policy, one of the female air traffic controllers testified that (1) prior to 2008, when making a request for LWOP for child care purposes, she was not required to make a written request to have her leave granted, and could request LWOP without submitting any written documentation; (2) prior to 2008, she requested, and was granted, LWOP as often as two to three times per week; (3) she requested Annual Leave thousands of times during her career at the New York Center, and does not recall ever having a previously granted request for annual leave cancelled or denied; and (4) when she wanted to substitute her credit hours for annual leave, she would simply make the change herself on the appropriate form, and never had any issues doing so. (Pl.'s 56.1 Statement ¶¶ 148-57.)

Defendant concedes that these three female employees were permitted to submit leave using this special procedure and plaintiff was not. Moreover, defendant concedes that the female employees are employed in full-time air traffic controller positions that are identical to the plaintiff's position. However, defendant contends that they were not similarly situated to plaintiff for two reasons. First, defendant asserts that these female employees had been former part-time employees and that this special arrangement regarding leave requests for child care was made upon their return to full-time work. Second, defendant notes that these female employees made a written request to the Facility Manager for this special arrangement.

Although defendants contend that these employees were not similarly situated to plaintiff as a matter of law, the Court disagrees and finds that there is a genuine issue of disputed fact on this point that precludes summary judgment. It is well-settled that a plaintiff can raise an inference of discrimination by showing disparate treatment – namely, that a similarly situated employee outside the protected group received more favorable treatment. *See Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1977); *Mandell v. Cnty. of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003); *Norville v. Staten Island Univ. Hosp.*, 196 F.3d 89, 95 (2d Cir. 1999). The law does not require the employees to be similarly situated in all respects, but rather requires that they be similarly situated in all material respects. *See McGuinness v. Lincoln Hall*, 263 F.3d 49, 54 (2d Cir. 2001) ("A plaintiff is not obligated to show disparate treatment of an *identically* situated employee." (emphasis in original)); *accord Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 64 (2d Cir. 1997). The Second Circuit has further defined what the term "all material respects" means in this context:

> What constitutes "all material respects". . . varies somewhat from case to case and, as we recognized in *Norville*, must be judged based on (1) whether the plaintiff and those he maintains were similarly situated were subject to the same workplace standards and (2) whether the conduct for which the employer imposed discipline was of comparable seriousness . . . . Hence, the standard for comparing conduct requires a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases, rather than a showing that both cases are identical

13

. . . . The determination that two acts are of comparable seriousness requires – in addition to an examination of the acts – an examination of the context and surrounding circumstances in which those acts are evaluated.

*Graham v. Long Island R.R.*, 230 F.3d 34, 40 (2d Cir. 2000) (internal citations omitted). In the instant case, plaintiff is comparing himself to female employees with the identical job as plaintiff. Moreover, as to plaintiff's failure to make a written request for the special arrangement, plaintiff contends that he was unaware of the availability of such a special arrangement for male employees, and was never told about it when he had the two disputes with his supervisor about leave for child care. Under these circumstances, the question of whether these females, who previously had part-time status, are similarly situated to plaintiff cannot be resolved on summary judgment. *See Graham*, 230 F.3d at 39 ("Whether two employees are similarly situated ordinarily presents a question of fact for the jury."); *see also Lizardo v. Denny's, Inc.*, 270 F.3d 94, 101 (2d Cir. 2001) (same); *cf. Curry v. City of Syracuse*, 316 F.3d 324, 333 (2d Cir. 2003) ("It is well established that '[c]redibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment.'" (quoting *Fischl v. Armitage*, 128 F.3d 50, 55-56 (2d Cir. 1997))).

Second, as noted *supra*, plaintiff also points to evidence that while he was required to indicate the type of leave he was taking and the reason for his request, his similarly situated female colleagues did not have to indicate the reason for their request nor did they have to indicate whether they were taking FMLA or LWOP.

In sum, viewing the evidence in the light most favorable to plaintiff and drawing all reasonable inferences in his favor, the Court concludes that sufficient evidence exists to raise an issue of material fact as to whether defendant engaged in gender discrimination in connection with the denial of leave to plaintiff in August 2007. Accordingly, summary judgment on the gender discrimination claim based upon the denial of the August 2007 leave request is unwarranted.

## C. Ehrhard's Title VII Claim of Retaliation

Plaintiff also asserts that defendant retaliated against him after he made complaints regarding gender discrimination in connection with his leave requests. In particular, plaintiff asserts that (1) from June 2007 through October 2007, he complained to his supervisors that he was being treated differently than his similarity situated female colleagues regarding leave requests, and (2) he filed a formal complaint with the EEO alleging discrimination and retaliation, that was amended on or about January 14, 2008. Plaintiff alleges that immediately following his complaints he was subjected to a myriad of adverse actions by his supervisors designed to retaliate against him for his protected activity. Defendant argues that summary judgment is warranted on the retaliation claim because, among other things, the alleged actions are not materially adverse actions, and plaintiff could not have reasonably believed that his requests were denied due to gender discrimination. As set forth below, the Court concludes that there is sufficient evidence in the record, when construed most favorably to plaintiff, to preclude summary judgment on the retaliation claim.

### 1. Legal Standard

Under Title VII, it is unlawful "for an employer to discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by [Title VII]." 42 U.S.C. § 2000e-3(a).

The Court evaluates a Title VII retaliation claim under the three-step, burden-shifting framework used for an adverse employment claim, as established by *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L.Ed.2d 668 (1973). First, a plaintiff must establish a prima facie case of retaliation by demonstrating that "(1) the employee was engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered an adverse employment action; and (4) there was a causal connection between the protected activity and the adverse employment action." *Gregory v. Daly*, 243 F.3d 687, 700 (2d Cir. 2001) (quoting *Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1178 (2d Cir. 1996)). The term "protected activity" refers to action taken to protest or oppose statutorily prohibited discrimination. *See* 42 U.S.C. § 2000e-3; *see also Wimmer v. Suffolk County Police Dep't*, 176 F.3d 125, 134-35 (2d Cir. 1999). Informal as well as formal complaints constitute protected activity. *See Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990). Title VII protects not only those employees who opposed employment practices made unlawful by the statute but also those who have "a good faith, reasonable belief that the underlying challenged actions of the employer violated the law" even if those actions did not. *McMenemy v. City of Rochester*, 241 F.3d 279, 283 (2d Cir. 2001) (quoting *Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons,* 842 F.2d 590, 593

(2d Cir. 1988)). In determining whether a plaintiff has satisfied this initial burden, the court's role in evaluating a summary judgment request is "to determine only whether proffered admissible evidence would be sufficient to permit a rational finder of fact to infer a retaliatory motive." *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005).

The burden then shifts to the defendant to articulate a legitimate, non-discriminatory reason for the employment action and if he carries that burden, it shifts back to plaintiff to demonstrate by competent evidence that the reasons proffered by defendant were pretext for retaliatory animus based upon the protected Title VII activity. *See Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006).

The Supreme Court has defined an "adverse employment action" in the Title VII retaliation context (distinct from and broader than the standard in the Title VII discrimination context) to mean an action that is "materially adverse" and that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68, 126 S.Ct. 2405 (2006) (internal citations omitted). In particular, "the significance of any given act of retaliation will often depend upon the particular circumstances." *Id.* at 69, 126 S.Ct. 2405.

Furthermore, under *Richardson v. New York State Department of Correctional Service*, 180 F.3d 426, 444 (2d Cir. 1999), *abrogated on other grounds by Burlington Northern*, 548 U.S. at 68, 126 S.Ct. 2405, the Second Circuit held that "unchecked retaliatory co-worker harassment, if sufficiently severe, may constitute adverse employment action so as to satisfy [that

prong] of the retaliation prima facie case." *Id.* at 446; *see also McWhite v. N.Y. City Hous. Auth.*, No. 05 Civ. 0991 (NG)(LB), 2008 WL 1699446, at *11 (E.D.N.Y. Apr. 10, 2008) (applying *Richardson* to a retaliatory hostile work environment claim); *Brown v. N.Y. State Dep't of Corr. Servs.*, 583 F. Supp. 2d 404, 421-22 (W.D.N.Y. 2008) (denying summary judgment on Title VII retaliation claim in part on plaintiff's coworkers' alleged retaliatory acts and citing *Richardson*); *Nugent v. St. Luke's/Roosevelt Hosp. Ctr.*, No. 05 Civ. 5109 (JCF), 2007 WL 1149979, at *13 (Apr. 18, 2007) (considering a retaliatory hostile work environment claim).

Regarding the causal connection prong of the retaliation inquiry, a plaintiff may establish a causal connection between the protected activity and the adverse employment action either through direct evidence of retaliatory animus, or by circumstantial evidence. *See Sumner v. U.S. Postal Service*, 899 F.2d 203, 209 (2d Cir. 1990) (holding that causal connection may be "established indirectly with circumstantial evidence, for example, by showing that the protected activity was followed by discriminatory treatment or through evidence of disparate treatment of employees who engaged in similar conduct or directly through evidence of retaliatory animus"). Where there is no evidence of retaliatory animus or a showing of disparate treatment of fellow employees who engaged in the same conduct, proof of causation may be shown indirectly, by demonstrating that the protected activity was followed closely by retaliatory action. *Gordon v. N.Y. City Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000); *Cifra v. Gen. Elec. Co.*, 252 F.3d 205, 217 (2d Cir. 2001) ("[T]he causal connection needed for proof of a retaliation claim 'can be established indirectly by showing that the protected activity was

closely followed in time by the adverse action.'") (quoting *Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1178 (2d Cir. 1996) (internal citation omitted)). Although the Second Circuit "has not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action[,]" *Gorman-Bakos v. Cornell Co-op. Extension*, 252 F.3d 545, 554 (2d Cir. 2001), some district courts have generally concluded that "a passage of two months between the protected activity and the adverse employment action seems to be the dividing line." *Cunningham v. Consol. Edison, Inc.*, No. 03 Civ. 3522(CPS), 2006 WL 842914, at *19 (E.D.N.Y. Mar. 28, 2006) (collecting cases). However, because the Second Circuit has found periods well beyond two months to be sufficient to suggest a causal relationship under certain circumstances, courts must carefully consider the time lapse in light of the entire record. *See, e.g., Grant v. Bethlehem Steel Corp.*, 622 F.2d 43, 45-46 (2d Cir. 1980) (holding eight-month gap between EEOC complaint and retaliatory action suggested a causal relationship); *see also Richardson*, 180 F.3d at 446-47 (holding abusive acts within one month of receipt of deposition notices may be retaliation for initiation of lawsuit more than one year earlier).

## 2. Application

As a threshold matter, defendant argues that summary judgment on the retaliation claim is appropriate because "plaintiff's belief that the three women received unwarranted, preferential treatment was not based on any information, but solely on unsupported speculation." (Def.'s Memorandum of Law at 11.) However, as discussed *supra*, the Court has concluded

that the question of whether the three female employees are similarly situated cannot be resolved on summary judgment. For the same reasons, the reasonableness of plaintiff's belief of gender discrimination as it pertains to the elements of retaliation, also cannot be resolved on summary judgment. If plaintiff's version of the evidence is credited and all reasonable inferences are drawn in his favor, a rational factfinder could conclude that his belief that he was the subject of gender discrimination was reasonable and in good faith. Thus, summary judgment on this ground is unwarranted.

Defendant's argument that the alleged retaliation is not sufficiently adverse as a matter of law to constitute an adverse employment action for purposes of retaliation, is similarly unavailing. Plaintiff alleges a whole panoply of adverse actions that he alleges were retaliatory, including the following: (1) Azzarone advised plaintiff's supervisors, without justification, to deny any requests plaintiff made for leave; (2) defendant issued plaintiff a sick leave abuse letter and put him on sick leave restriction; (3) Grandison denied plaintiff's medical certificate as insufficient and charged him with AWOL; (4) plaintiff's requests for leave and shift swap requests were denied without justification but granted for plaintiff's similarly situated co-workers; (5) plaintiff's previously approved shift swaps and annual leave were cancelled and denied; (6) plaintiff was prohibited from using his credit hours towards annual leave or vacation time while other employees were permitted to do so; (7) defendant failed to investigate a co-worker's verbal assault on the plaintiff; (8) Grandison failed to investigate plaintiff's claims of vandalism; and (9) plaintiff was sent home and charged

1.5 hours for violation of the dress code.[4] If plaintiff is able to prove these allegations, a rational jury could certainly conclude that one or more of these actions were "materially adverse" in a manner that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination" *Burlington*, 548 U.S. at 68, including by creating a retaliatory, hostile work environment.[5] Accordingly, summary judgment on this ground is denied.

Finally, the Court concludes that plaintiff has pointed to evidence, when construed most favorably to plaintiff, that is sufficient to raise an inference of retaliation that precludes summary judgment on this claim.

First, many of the adverse actions cited by plaintiff occurred in close proximity to his protected activity. For example, plaintiff states that he made his complaints of gender discrimination beginning in late June and July 2007, and within several months, he

---

[4] In addition to the allegations in the amended complaint, in plaintiff's memorandum of law in opposition to defendant's motion for summary judgment, plaintiff notes, *inter alia*, that: (1) plaintiff was assigned to excessive training for committing an operational error resulting in a cancelation of three of his overtime shifts, (2) plaintiff was given the lowest rating on his Contribution Assessment Decision Aid, which resulted in plaintiff not receiving a salary increase based on that assessment, and (3) plaintiff was denied the opportunity to advance his career by defendant not permitting him to act as an instructor to other controllers at New York Center. (Pl.'s Memo. at 17 (citing Pl.'s 56.1 Counter Statement ¶¶ 140-142.))

[5] Although defendant claims to lack notice that plaintiff was asserting a retaliatory, hostile work environment, such allegations are contained in the amended complaint. (*See, e.g.*, Am. Compl. ¶ 38 ("As a result of defendant's retaliatory animus and on or about September 10, 2007, Plaintiff was placed on sick leave restriction. [sic] Demonstrating adverse action and hostile work environment due to plaintiff's formal complaints of gender discrimination as provide [sic] in plaintiff's prior EEO activity.").)

was subject to the following alleged adverse actions: (1) in August 2007, his request for leave was denied; (2) a memorandum, dated August 23, 2007, accused plaintiff of questionable use of sick leave, and required a medical certificate for each absence (and such medical certificates were denied as insufficient); (3) on August 7, 2007, supervisors failed to investigate a co-worker's verbal assault on plaintiff; (4) plaintiff was temporarily charged AWOL on October 29 and 30, 2007;[6] and (5) plaintiff's annual leave for November 4 and 5, 2007 was cancelled, and reinstated.   Further, plaintiff asserts that, after he filed his EEOC complaint in on November 7, 2007, he was subject to the following retaliation within several months of that formal complaint: (1) Grandison cancelled plaintiff's annual leave for December 29 through 31, 2007; (2) Grandison failed to investigate plaintiff's claims of vandalism on November 19, 2007 and January 31, 2008.   Thus, the close proximity of many of the alleged retaliatory acts to the protected activity provides an inference or retaliation.

Second, with respect to many of these alleged acts, plaintiff points to evidence that no other employees were subject to this treatment.  For example, plaintiff asserts that his requests for leave were denied without justification, while the same requests were granted for others.  (Pl.'s 56.1 Statement ¶¶ 131-34.)  In addition, plaintiff contends that his requests for shift swaps were denied or cancelled, while almost always granted for plaintiff's co-workers.   (Pl.'s 56.1 Statement ¶¶ 15-18, 135-36.)   Plaintiff further contends that he was prohibited from using his credit hours towards annual leave or vacation time, while other employees were permitted to do the same.  (Pl.'s 56.1 Statement ¶ 139.)  Plaintiff also claims that

his approved request for annual leave was subsequently cancelled or denied which rarely, if ever, occurred with other employees. (Pl.'s 56.1 Statement ¶¶ 138-39, 156.)

In sum, having reviewed the record, and construing the evidence most favorably to plaintiff, the Court concludes that plaintiff has put forth sufficient circumstantial evidence of a causal connection between his complaints about defendant and the alleged adverse action to survive summary judgment on the retaliation claim.   Given the short time period between the protected activity and the complained of retaliatory action, and viewing these facts in the light most favorable to the plaintiff, and drawing all reasonable inferences therefrom, the Court declines to rule that no reasonable jury could determine that plaintiff's protected activity and the ensuing acts of alleged retaliation were not causally connected.   Moreover, viewing the evidence in the light most favorable to the plaintiff, a reasonable juror could also find that the alleged acts by defendant could have dissuaded a reasonable worker from making or supporting a charge of discrimination, and that plaintiff's belief of gender discrimination was reasonable and in good faith.  Thus, summary judgment on the retaliation claim is unwarranted.

---

[6]   Plaintiff claims his complaints of gender discrimination continued into October 2007.

IV. CONCLUSION

For the reasons set forth above, defendant's motion for summary judgment is granted in part and denied in part. Specifically, defendant's motion for summary judgment with respect to plaintiff's claim of discrimination based upon his request for leave on June 27, 2007 is granted. The defendant's motion for summary judgment is denied in all other respects.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: March 28, 2012
       Central Islip, NY

* * *

Plaintiff is represented by Bruce E. Wingate, Esq., Kyle T. Pulis, Esq., and Scott M. Mishkin, Esq., of Scott Michael Mischkin, PC, One Suffolk Square, Suite 240, Islandia, New York, 11749. Defendant is represented by Vincent Lipari, Esq., of the United States Attorneys Office, Eastern District of New York , 610 Federal Plaza, 5th Floor, Central Islip, NY 11722.